The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Thank you. Be seated. Mr. McDaniel, whenever you're ready, we'll be glad to hear from you. Thank you, Your Honor. May it please the Court. I am Brian McDaniel for the petitioner, Anthony Odom. He is seeking a petition for habeas corpus relief from a criminal conviction based upon the unconstitutional taking of conclusive judicial notice of an element of the crime in which he was charged. It is the petitioner's position that the taking of conclusive judicial notice in his trial was tantamount to the judge directing the verdict on that element of the crime. And the South Carolina Supreme Court not finding this was an error, was a structural error, in fact, was clearly contrary to or an unreasonable application of established United States Supreme Court law and precedent that requires, therefore, habeas corpus relief in this case. It is not in dispute. Can you just tell me what is the clearly established law that says that a directed verdict on an element of an offense is not subject to harmless error review? It is set forth in Sullivan, Your Honor, and that is if we, the Sullivan case, if we look at the case and the facts of this case and the error in this case, it so invaded the structure of this case that it had to apply structural error analysis. But what about the Nieder case where there is no jury verdict at all on an element of the crime? That is not structural error? Well, we believe there are some significant differences between this case and the Nieder case, Your Honor, and I will be glad to speak to those now. But specifically, the Nieder case had some very important differences. One was the Nieder case did not take conclusive judicial notice, even though it was similar in the judge omitting the element, but it did not direct the verdict in that case in the same manner because under the federal rule, you could not take conclusive judicial notice. The federal rule is written to avoid that constitutional error. But second, in Nieder – I'm sorry. And what difference does that make practically? I mean, I realize this is a genuine question I have. Is there something special about a directed verdict as opposed to just not charging the jury at all? Yes, Your Honor, it is under – well, it goes to the same issue, but under the Sullivan case, the wrong party is determining the verdict. In that particular case in Nieder, at the time the judge made that ruling, it was believed to be or was the current law. The judge wasn't acting improperly. But you still have, as you phrase it, the wrong person making the decision about the existence of an element. That is true. There are other factors that distinguish this case from Nieder, maybe in more important ways than that. Okay. And if I can speak to those. Secondly, in Nieder, the issue was not contested. The materiality was the issue in Nieder. The tax income of $5 million, whether that was a material amount or not, the defendant in that case didn't contest it, didn't raise that, didn't put in evidence, didn't make argument that it was not material. That might go to the question of whether or not it's harmless error, but how does that make it structural? Well, it makes it structural because in this case, in Odom's case, during the middle of the trial, the defense was precluded from defending on an element of the crime. That is, during the state's case, the judge cut off all discussion, all evidence, said the jury can't view any of the evidence, can't consider any of the evidence. Nothing like that happened in Nieder. Nothing to that extent happened in Nieder. The defense could have put in some kind of evidence, could have argued that point to the judge and didn't do it in the Nieder case. The Nieder case did not involve an element of surprise as well. This was the additional element here. Surprise? An element of surprise, yes, Your Honor. In this case, the documents that were presented to the judge were not provided pre-trial. These were documents, and one of the objections that was made by Odom's counsel was that these were not provided to them, were a violation of Rule 5, and that there was a number of other objections that they raised as to why these weren't authenticated, there wasn't somebody there to present them, and that it wasn't proper under South Carolina law to present these type of DMV records. And the judge didn't present those into evidence. The court, the state said, well, we're not asking the judge to actually admit these into evidence. We just want the judge to make a conclusive judicial finding as to this element. That's different. The judge in Nieder didn't preclude, didn't stop the defense from arguing and from contesting some evidence that was coming in, didn't preclude them from making evidence. But at the point in this case, in Odom's case, where the state was still presenting their evidence, the judge ruled on one of the elements of that crime, stopping all further evidence, stopping the defense, if they had evidence, to contest this element from presenting it, stopping the defense in closing arguments from arguing it. It's structural not just because of the nature of the defect, but also because of when it occurred in the case. But was any argument or evidence presented to the trial judge to contest the age of whether or not your client, or your client in this case, was over 18? Well, to the judge, well, first let me just say the burden of proof is obviously on the state. Obviously, you can't take judicial notice of something that's contested. But he did. I would argue he did in this case. They would not agree. In fact, the judge asked, will you stipulate to the age of the defendant? And they said no. That is not agreeing. That is contesting an element when the state has the burden of proof.  No, I did not. I did not, Your Honor. But that is contesting the element in a criminal trial. All you have to do is say, I'm not guilty, and the state has to put forth the evidence. The state didn't have to do that in this case. They didn't put forth the evidence. They didn't meet that burden. And the defense was stopped from presenting evidence, stopped from making argument on that particular issue. We see it as significantly different. Go ahead. No, go ahead. I mean, is it possibly different from neither just the way you're describing it? Because the jury in this case was instructed, he's old enough. You cannot consider that. Whereas at least in neither, although they weren't instructed on materiality, if anyone thought it wasn't very important, there was nothing stopping the jury from sort of giving voice to that, debating that if they wanted to. That's right. I think that's significant, Your Honor, that the judge actually said, you shall not debate this issue. I am not allowing you to consider this element. And as you said, the court has said that evidence in neither was incontrovertible. And there's so much evidence in place that it was incontrovertible. And that's how this case differs from a lot of the presumption cases or the neither case, is the court didn't and couldn't consider other evidence that might have led them to this conclusion because the judge precluded that. And that's a very unusual case. And the judge actually telling the jury, do not consider the evidence. Do not debate it. Do not take it into account. Not to mention the effect that that would have on the confusion that could create to the jury, that that could, after the judge says, I have no opinion on the facts of the case at the beginning, tells them that he is acting only as a referee and that they are the determiners of the facts. They will be the ones to find each fact to a reasonable degree or beyond a reasonable doubt. And then to turn around later in the trial and say, I found a fact and you must accept it, had to confuse a juror that was paying attention to what the judge had earlier told them and what the judge said again in jury instructions in contradiction to that. It's a very unusual case. I think a very narrow case in when it happened and exactly what was done by the judge. You can't say that other facts were concluded by the jury that were equivalent to this same fact, that somehow by making other determinations that we know they made, that they would have made this determination as well. I think it's not, there's really no way to say that. And that is another distinguishing factor. Let me interrupt you just a sec. The trial attorney representing the defendant was faced with the states offering the driver's license to prove the age of the defendant. Is there ever any evidence offered to show that's not right? Is there any objection to the license to show that it's inaccurate or anything of that nature from the defendant? Well, let me correct you. I know you don't have to prove this proven element. I'm not trying to. It was not the driver's license. This was DMV records. And what those DMV records are, we do not have in the record as to what they are. But there was no challenge. There was a challenge. There was a challenge. To their inaccuracy. It was challenged. To their inaccuracy. Yes. There was a challenge. It may have been a general challenge that we don't know what, if these are accurate. And there are case law that's, and this is what the counsel argued, that says these type of records can be inaccurate. But specifically a discussion. How would they put it in the record? I think they wouldn't because they didn't properly provide them. I think that it was a Rule 5 violation, not disclosed pre-trial. They knew they couldn't get it in. And they knew that they had not proven that element. And so they were trying to find a backdoor way to do it. I don't know. Rule 5 is a state procedural rule. That's correct, Your Honor. The criminal procedure rule requiring disclosure. It's a disclosure rule requiring that the documents they're going to present at trial be disclosed. And they had not disclosed this document. I thought defense counsel did say that he wanted to put in evidence from questioning the authenticity of the records. He did. That is correct. Yes, he did question the authenticity of it. He questioned the correctness of it. And he suggested that there were specific regulations that he could investigate. And I think those are in the motion for a new trial that was presented that would say that these particular types of records can't be put in or can't be used for this purpose. The judge never let that argument be heard. At the point in trial, the judge said that he was going to take up this argument later. But very shortly after that, without readdressing it, the judge made the ruling and then instructed the jury. Instructed the jury in the middle of the trial. During the state's case, instructed the jury. Not at the end. He did it again at the end, but he did it during the state's case.  The defense did immediately object to the request. As it was pointed out, the state said they were not seeking to introduce the evidence. And that is from the state themselves. We're not trying to introduce it. But we were asking the judge to take conclusive judicial notice. The defendant was asked if he would stipulate, and he would not. And I just kind of finish up by saying that taking a conclusive judicial notice of a crime element was a structural error that affected the entire process. And that is really the point that the trial process became fundamentally unfair at the point that the judge made that ruling. The interference into the province of the jury deprived the defendant of the basic protections for which criminal trial is provided to the accused, that the wrong party determines the guilt. And while we have How many structural errors are left under the Supreme Court? I'm sorry, Your Honor. How many structural errors are left in the law in criminal habeas proceedings under the Supreme Court precedent? Well, I don't think we have a Have you got a list of them or anything? I think there's a list that Nieder sets out of some of them that exist, but Have you got a list of them there? I don't have a list. Okay. There aren't very many left. There's not very many left, but this should be one of them. This should fit under them. And really, the Nieder case still applies Sullivan. The Nieder case says it follows Sullivan, that it is in a lot of ways the outlier, the boundary of where you can find harmless error, but Sullivan is still the rule that it follows. And if that is the case, this case clearly goes beyond Nieder. And we believe would not be subject to harmless error analysis. But if the court were to do that, I would address that there really is no evidence in the record of age. The state has asserted two facts, really three that they have asserted. Only two were presented or in the record. And I would address those briefly. That there was in the chat that the state contends that the defendant admitted he was 40 years of age. Even though the problem with that assertion is that it conflicts with the judicially concluded age that was instructed to the jury and is therefore objectively unreliable. The judge's instructions would make Odom many, many years younger than 40 at the time of trial. Even by the time of trial, some five years later, Odom would have not reached 40 years of age based on the age given by the judge. If the chat evidence is not accurate as to age of Odom, which by any standard is not accurate, then how can this court now look back and speculate as to how the jury would have used this untrue information or untrue evidence in its analysis? You have to ask yourself, if the age was at least seven years off, if the age given is evidence that the person is over 18, but it is actually wrong by seven years, would it have still been evidence of age if on the chats the defendant had said he was 22? He could have been 15 or 29 if you use the age difference. Not to mention that the jury would likely be suspicious of an online adult chat room and there was some testimony from experts that people lie in these chat rooms. There's also a statement that the defendant was from Columbia, which he was not, which was made in the chat room. So it's highly suspect if you get into a harmless error analysis that you could rely on that evidence to say that they convinced the jury beyond a reasonable doubt that he was over 18. Finally, the defendant's appearance at trial has been raised and we would just suggest the only case cited for that principle is one, I believe, a Nebraska case. Appearance at trial, you mean what he looked like? What he looked like, yes. They could use that as evidence. However, the defendant did not... They could tell whether he was an old man or not. They could tell. Or they could say he looks like he's 15 and that he's under the age. And what we don't have in this, to this record, is any evidence of what that would be. We don't have any instance where the jury was instructed to look at him, where he was actually testified at all. And I see that I'm out of time, if I can... How old was he at the time he was tried? The judge indicated that he was born June 22, 1973. And when was the trial? June 22, 1973. And when was the trial, sir? The trial was in 2011. Thirty-eight. Thirty-eight, thank you. Yes, but the charges are from 2006. That's when the chats had occurred. Okay. You've got some reply time, I think. Thank you, Your Honor. Mr. Crantham. May it please the Court. On behalf of Respondent, I'm Caroline Crantham from the South Carolina Attorney General's Office, and today I ask that you affirm the district court order denying habeas relief in this case. And if I may, I will jump to the question of why this, the heir, the judicial notice in this case, is not one that has been classified as structural heir by our United States Supreme Court jurisprudence. There are six structural heirs that are deemed to exist, to be recognized today. Nieder is directly on point, we believe in this case, as to why the heir in Odub's trial does not fall into one of those six. The six have to do with the deprivation of the right to counsel, the inability to represent yourself, if competent to do so, having an impartial or a biased trial judge, having a defective reasonable doubt instruction, which I believe would be the structural heir that might hit closest to the heir, determined in this case by the South Carolina Supreme Court, the denial of the right to public trial as a remainder, structural heir, as well as an unconstitutional makeup of a jury. And so jumping back to Nieder and why Nieder directly applies in this case. In Nieder, we have a defendant who was on trial for... Are all six of those listed in the letter case, or did you get those from the remaining authorities? Nieder cites back to Arizona v. Fulminante, and so the list I derived from Arizona and then cross-checked with Arizona that those are still there. And the South Carolina... You're pretty confident of that list. I am, Your Honor. And the South Carolina Supreme Court, again, in its opinion, cites to Arizona, which is the case that I believe collects that list in the first instance. And going back to Nieder, we have... Which one did you say was closest to this one, the reasonable doubt instruction? There has been found a structural heir when there is a defective reasonable doubt instruction. Defective reasonable doubt instruction. Yes, Your Honor. He would say, when they say this one, what would he characterize this one as, the other side? I believe from his argument that it would, if this court were to go, it would have to somehow fall under that structural heir category. But I think that when you look... He says it has to be structural heir, but what would he... How would he define the heir? So the South Carolina Supreme Court found that the judicial notice in this case, which was of a birth date, a birth year, South Carolina Supreme Court dictated that that was tantamount to taking a directed verdict on the element that... So they characterized it as a directed verdict. They did. Which is normally a civil proceeding term, isn't it? I believe so. I went back to the Winship case, which discusses, of course, that a defendant must be found guilty beyond a reasonable doubt of every element. But jurisprudence has since then evolved, and now there are two lines of cases that go directly to what we have here, which are misinstructions or omitted elements from the substantive offense that is charged to the jury. But we also have, in our circuit, right, we have this 19, I think it's 1995 Johnson case that's directly on white right that says... Yes. A directed verdict on an element of a crime, and I think there it was that the credit union was federally insured. It was a federal robbery statute. You had to show that the credit union that had been robbed was federally insured. The judge directed a verdict on that element, and we said that's structural error. I am not familiar with the content of that particular... Is it Johnson, did you say? The Johnson that I read from this circuit was, I believe, a couple years later, and it, again, was a misinstruction to the jury, and harmless error was applied. Yes, so this one was on all fours, obviously, different facts, but it was directed verdict, and we put it under Sullivan, and we said that's structural error. So for me, the question in this case, and I guess I'm just asking you to jump ahead, is is it... So we would have to say that Nieder supersedes that. It's clear enough. It's so on point that we have to, that we can kind of go past what is circuit authority at this point. Yes, Your Honor, I would agree, and this is why. So the Supreme Court decision out of South Carolina does not discuss this, but Nieder really hits exactly what happened in this case. In Nieder, it was the element of materiality. Now, the jury, first of all, in Nieder, was not instructed on the element of materiality as an element of the mail and bank fraud charges in the jury charge. But before that, they were also instructed in a different portion of the jury charge that materiality was not a question for them to decide. I think the exact language for Nieder was that it was not a question before them, and that charge really lines up with what occurred in this case. In this case, if you look at the jury charge and you look at the part that's included in the second supplemental record on appeal here back in the appendix, jury charge took place in two distinct segments. In the first part of that jury charge, you have the trial judge going through your general introductory charges, and that is the portion where he included for the second time, it's on page 64 of the joint appendix, that judicial notice has been taken of the defendant's birth date. And then he gets to the end of that opening part of his jury charge, and he offers to take a break. He offers to take a recess. Did he tell them what the birth date was? He did tell them what the birth date was. 1973. 1973 is the year the birth date is redacted in the appendix. And then he offers to take a break, and he breaks up his charge, and he very clearly announces to the jury at that point, okay, I am now about to charge you on the substantive elements of the offense in this case. And the substantive elements of criminal solicitation with a minor are, and then he never instructs the jury that they must determine as an element of the offense that the defendant was 18 years of age or older. So under Nieder, you have the essential withdrawal of an element of the offense from the jury's consideration. Yes, you have that judicial notice of his birth date. Just like in Nieder, yes, you have the instruction that they need not consider materiality as a question of fact, that that is not a question before them. That, we think, is akin to the judicial notice in this case. And then as the second juncture there, you have the withdrawal of that element, of the fact-finding of Odom being over the age of 18. Again, remember, the state didn't have to prove exactly how old he was, just that he was over the age of 18. And so that is why we think that Nieder very clearly aligns with Odom's trial and the case before us. One of the things he says is, the distinction is, not only was the issue taken away from the jury and decided by the judge, but the defendant was not allowed to contest it. Now, why is that not an important distinction? Your Honor, I would answer that question by very simply stating, and again this goes to the fact-finding, I believe, of the state court when it did find this error harmless, that nowhere in this appendix did the defendant, or at trial, at no point did he contest that he was not at least 18 years of age. And a big clue that I think that answers that question, Judge Traxler, is at ECF 22-7, page 15, which is part of the appendix in this case, where trial counsel argued his directed verdict motion. And when he argued that directed verdict motion, he essentially entirely announced what his theory of the defense was at trial. And his theory of what the defense was at trial was that when Odom went into that chat room, he had to acknowledge that he was at least 18 years of age or older. And okay, yes, okay, people lie in the chat room and that's okay. But the rest of that defense, as explained at the directed verdict motion, says or explains that how was Odom to believe that because all the other people in that chat had to say that they were 18, why was Odom to believe that the persona with which he was chatting was not actually also over the age of 18? So he plays this fantasy defense, but he plays it in the opposite way at trial as it is now kind of being applied in this particular appeal. And so nowhere else in the trial record, again, does he contest that he was at least 18 years of age. He refuses to stipulate to it, right? I mean, this just seems like such a mess up. If I'm understanding it right, the state sort of violates some procedural rules, so it can't get the records in and plan to prove it through these records. It can't get them in. And so the judge, annoyed, is like, well, can't you just stipulate to his age? And they're like, no, we're not stipulating. I mean, why isn't that enough? Well, they refused to stipulate to it, but there was no way to get around the establishment of the adjudicated fact of the birth date. There was no finding by the trial court. I don't think the Brady or the discovery rule violation was pressed at trial. There was no finding that there was any type of misconduct in the way that the DMV records were being presented. He did refuse to stipulate to the birth date, but, again, the way that he contested the judicial notice was on, one, the discovery violation, two, that you cannot judicially notice the birth date again because it would be tantamount to taking a directed verdict. And there was a third way that he contested it, and for some reason that escapes me right at this moment. But it didn't have to do— He didn't say that he wanted to raise questions about the reliability of the document? Yes, Your Honor. Thank you. The authenticity of the actual DMV records. There was nobody from the DMV there. But the state wasn't asking those records to be entered into evidence. About reliability, too? No, am I wrong? I thought part of the argument was, like, it's an element of the crime. I'm not taking something some lady wrote at DMV and using that as— The way that I understood the reliability argument, it kind of dovetailed into the lack of authenticity. The foundation was not laid for the authenticity of those DMV records. The records keeper wasn't there. They were just derived from the DMV. That's the extent to which I read that particular objection from the record. And so, again, there's still no presence in the record of Odom contesting that he was not at least 18 years of age. And so we believe that that lends to the reasonableness of the finding of harmless air by the state Supreme Court. And, again, that would be under 2254E1 on habeas review. The harmless air application is a finding of fact, which would be presumed correct unless rebutted by clear and convincing evidence. And so not only in state court did Odom not present any evidence that he wasn't at least 18 years of age, but in this habeas proceeding, we don't have anything in the state court record and we don't have anything additional by clear and convincing evidence that would rebut the application of harmless air or the fact finding that this air was harmless by the state Supreme Court under 2254E1. And so we believe that's one reason. And what is the finding? I mean, what makes it clear that this is a harmless air? So under 2254D, we are looking at the reasonableness of the state court decision. I totally understand the standards of review, but I'm just asking you, how do we know it's harmless? So the state Supreme Court applied NEDER. They did not go in depth in their application of NEDER. And so we know on habeas that even if the state court is wrong, that doesn't mean that there's a Supreme Court. No, but I'm just asking you as a matter of common sense. I assure you I understand we're under AEDPA. I understand the standard of review. What makes this air harmless? Because it falls under the classes of airs that as a matter of law have been determined to be a misconstruction. I'm just not answering, asking the question. I'm sorry, Your Honor. Assuming harmless air applies and with all of the AEDPA, the benefit of all of the AEDPA deference in the world, what makes this air harmless? I mean, I guess I don't see what's in the record about his age that would allow us to say this is a harmless air. Didn't he say he was 40? He did say he was 40 in the chats, and we do have the chats in the record. The theory of the case is he lies on his chats, right? I mean, really. But you're going with that. You're not going with how he looked in the courtroom. Exactly. We are looking again at the State Supreme Court's determination. It is a factual determination that they listed out. He was present in the courtroom, and he was actually present in front of the Supreme Court. So you do want us to rely on what he must have looked like in the courtroom? Insofar as that is what the South Carolina Supreme Court already relied on, and under 2254, not to be repetitive, but we believe that that's an adjudicated fact that is entitled to deference, what the Supreme Court factually relied on, which, again, was the chats and was his presence. But the Supreme Court didn't make any finding about what he looked like in the courtroom. I mean, I have no idea what this guy looked like. They did not describe a finding. They merely mentioned. But, again, we believe that under the reasonableness standard, that there's nothing present in the record, right, that would contradict that. It's like you want us to take judicial notice conclusively of the fact that he must have looked kind of like his age. Because two courts, well, at least one court mentioned that it had been relied upon. And that's what we, I mean, we don't have anything else in the record, right? So we have to defer to that fact. Okay. And, again, I would go back to, in the harmless error determination by this court, we're looking at 2254. We're looking at the reasonableness of the state court decision. And this court has not decided a published opinion since Davis v. Ayala, which is the 2015 United States Supreme Court case that looks at habeas action and a habeas issue that has come up from direct review. And that case gives us some guidance on when the Brecht and Frey substantial injurious or actual prejudice standard should be applied by the habeas court. And Davis gives us guidance and kind of goes back to Mitchell v. Esparza from 2003 that says once you make that reasonableness determination, you don't need to go any further and do that additional test. And, of course, Frey tells us you don't have to apply both determinations. But I believe that Davis applies if you have a reasonableness determination here and you don't need to take that extra step and do that injurious standard. Do you think that the question of whether assuming harmless error review applies is the question of whether it was properly applied in this case within our certificate of appealability? I thought the only thing we—the certificate was limited to the question of whether harmless review error applies in the first place. Yes, Your Honor. That is how the certificate is worded. And we read it to be that limited question, but, of course, addressed the entirety of the district court determination. You said the COA is badly framed? No, Your Honor. I said that it's limited to whether or not the way that I— It's limited but just says—but it talks about whether the district court correctly concluded that the trial court's error in taking judicial notice of Odom's age, which was the element of the offense, was subject to harmless error review. Well, that doesn't seem to be right. We did read the certificate of appealability. You're saying that we have to decide whether the harmless determination made by the South Carolina Supreme Court was unreasonable. Under 2254D, that would be the standard that we— Which one? The one I just read to you there? The unreasonableness determination, yes. But the unreasonableness element part is not in the COA. We haven't read the certificate on that. So maybe the certificate is incorrectly framed is what my point is. We did read it to be a very broad— I do not personally know— I think we do. —how that would be reframed, but I believe you're looking at this de novo. I recognize that we do. We can recast it if it's incorrectly framed. But we can't change the AEDPA standard by the way we frame the COA, I don't think. No, Your Honor. We have to make it consistent with the AEDPA standard. No, I'm not saying that. I'm just looking at the COA, and it seems to say that the question that we agreed to hear was whether the district court was correct in concluding that this error was subject to harmless review. That doesn't mean that we framed it wrong. It just means that's the question we agreed to hear. Correct. And we interpreted that in preparation as kind of a broad grant, and so, again, we know that we're here on a certain action. I'm not faulting anyone's briefing. I'm just asking this question that just occurred to me, which is I'm not sure this whole very interesting discussion about how old did he look in the courtroom is actually in front of us. Yes, Your Honor. And so, again, in light of the grant, the certificate in 2254D and 2254E1, we would ask that you affirm the outcome of the district court order in this case, which denies habeas relief. We do think this clearly falls underneath in the structure of the error that occurred. Not that it was structural error, but just in the way that it was a withdrawn element from the jury's consideration. Is it fair to say that the South Carolina Supreme Court primarily relied on Netter? Yes, Your Honor, it is. And, you know, that opinion is short. They cite Arizona. They cite to Netter. But when you're looking at this, I don't think you can find a way that Netter doesn't apply to this case. I'm talking about what the Supreme Court of South Carolina did. Yes. They applied Netter, and they said, again, that there is a very limited amount of structural errors and that this falls into the category of one of many errors that can be quantified against the remainder of the evidence. And that's another reason that this error is not structural. You can quantify the conclusive age, or at least meeting that threshold age, of the defendant by the evidence that was presented at trial. Again, it wasn't contested. We have the chats. And it's okay under a number of state jurisdictions to rely or to give credence to the jury's ability to view the defendant in the courtroom, so long as that view is corroborated by other evidence. And in this case, we submit that the chats are what corroborate that evidence specifically. And, again, I would point you to the directed verdict motion that was argued on page 15 of ECF 22-7 from the district court in this case as going towards a clearer description of what the defense was. And the defense was not that the defendant was under 18. The defense was that he didn't have a reason to believe that the person that he was talking to was not lying. And so on that, we ask that you affirm. We don't believe that you need to go to the Brecht-Frey analysis because we think that the state court determination here was reasonable in all respects. No further questions? Thank you. Thank you. Mr. McDaniel. Thank you, Your Honor. If I just can reply, I would like to address the idea that the defense was as set out by the state, or rather the FLE, that he was not contesting this element. It's just not accurate. The defendant contested every element in this case. Whether or not that was set forth in a particular argument, it was his trial strategy to contest every element, and they did that. And I think for the court to suggest or to be suggested that he was not is to shift the burden to him that he has to put forth evidence to disprove a certain element. All he has to do to contest the element is say, I'm not guilty. And the state has to then go through every single element and prove it. He didn't have to offer any evidence of this. All he had to do was be able to refute or shoot down or contest the evidence that was put in by the state. And if he could do that, he would win the case. He would be not guilty, even if it was just this one element. So to suggest that he was not contesting it, I think, is inaccurate. Also, the argument that defense counsel made that the people who lie in the chat room is somehow now being flipped because the argument made at trial was he didn't believe that the person who said they were underage was underage because everybody lies. That's still consistent with the argument we're making today that everybody lies in adult chat rooms. And that was the argument that was made. You certainly don't take people at their word in an adult chat room, whether they're saying they're 13 or whether they're saying they're 40. And so I don't believe that that is an argument that is contradictory at all. And we do believe, and I just would reiterate with my last couple minutes, that neither is very distinct from this case. This was a contested element. This was an error that precluded argument, precluded evidence. It goes farther than neither did if this court were to say it was still subject to harmless error analysis, which we believe it is not. This is a constitutional error that was structural. It denied the defendant, Mr. Odom, a right to a jury trial. On every element, there are no unimportant elements of the trial or of the crime charged, and the state has the burden to prove them all. There is a surprise element to this information being allowed in, as well as in the Nieder case and in the other cases, the element that was ultimately omitted was proved by incontrovertible evidence in the case. And it was not a situation where that evidence was not in the record or before the court. In this case, it's not. There is no evidence on this point to the court. Unless there's any questions, I will be seated. Thank you, Mr. McDaniel. We'll come back and re-counsel and then go into our next case.
judges: William B. Traxler Jr., Robert B. King, Pamela A. Harris